[No. 19325.   Department One.—August 24, 1894.]

JAMES LACEY, APPELLANT, *v.* GEORGE K. PORTER, RESPONDENT.

MALICIOUS PROSECUTION — PROBABLE CAUSE — PROSECUTIONS OF LAND JUMPERS BY STOCKHOLDER OF CORPORATION—THREATS OF EMPLOYEE.—In an action for malicious prosecution, where it appears that the plaintiff belonged to a company of from two to four hundred men which was organized for the purpose of "jumping land," and a company of about fifteen of them, with a four-horse team loaded with lumber, were proceeding to go upon a tract of land owned by a corporation, in which the defendant was a large stockholder, when they were met by the superintendent of the corporation, who stopped them, and thereupon one of the party said that the owners might as well yield peacefully as he had three or four hundred men, and would go on the land, and they returned next day to survey the land, the defendant had probable cause to prosecute such parties for threatening to enter upon and detain the property by force and violence, and the facts that the threats to occupy the land were made by one of the employees of the company of jumpers, and not by the plaintiff, and that the plaintiff had already selected land on another tract, are immaterial.

ID.—EVIDENCE—DECLARATION OF CO-CONSPIRATORS.—In such action, where it appears that plaintiff was not only a member of the association of jumpers, but was actively participating in what was being done, the admission of testimony showing the acts and declarations of members and employees of the association, of the intention of the association to take possession of the land in which defendant was interested, is proper, although the declarations were made without the plaintiff's hearing.

ID.—BURDEN OF PROOF—WANT OF PROBABLE CAUSE.—In an action for malicious prosecution, the burden is upon the plaintiff to show affirmatively that there was a want of probable cause.

ID.—ACTIONS FOR MALICIOUS PROSECUTION NOT FAVORED—PROOF REQUIRED.—Actions for malicious prosecution are not favored in law, and will be sustained only when it is shown that the prosecution was in fact actuated by malice, and that the party instigating it had no reasonable ground for causing the prosecution.

ID.—MALICE—PROBABLE CAUSE—QUESTIONS OF FACT AND LAW.—Malice is a question of fact; but what facts and circumstances amount to probable

cause is a pure question of law, though whether such facts and circumstances exist is a question of fact.

ID.—ARREST IN GOOD FAITH FOR PROBABLE CAUSE—ADVICE OF COUNSEL. Where the facts upon which an arrest is made constitute probable cause, and the party causing the arrest acts in good faith, it is not necessary to show that he consulted counsel and acted upon his advice in causing the arrest; though taking the advice of counsel tends to show good faith and the absence of malice.

ID.—PROBABLE CAUSE A DEFENSE REGARDLESS OF MALICE.—In an action for malicious prosecution, where probable cause is found to exist, no amount of malice will entitle the plaintiff to recover.

ID.—TRIAL—DIRECTION OF VERDICT—CONFLICT OF EVIDENCE—APPEAL.— To justify the court in directing a verdict it is not necessary that there should be no conflict in the evidence; but where the evidence is such that it is clearly insufficient to support a verdict in favor of the party against whom the direction is given, the instruction is proper, unless the circumstances of the case indicate that upon another trial the evidence may be materially different, in which case the facts should be submitted to the jury in order that a new trial may be had; but in either case the decision of the trial court will be sustained, unless it clearly appears that its conclusion is wrong upon the facts.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion.

*Adams & Mitchell,* for Appellant.

The court erred in instructing the jury to find for the defendant, as the questions of malice, and of the existence of facts constituting probable cause, which are questions of fact, were thereby taken from the jury. (*Ball* v. *Rawles,* 93 Cal. 227; 27 Am. St. Rep. 174; *Harkrader* v. *Moore,* 44 Cal. 152; *Potter* v. *Seale,* 8 Cal. 220; *Strickler* v. *Greer,* 95 Ind. 596; 14 Am. & Eng. Ency. of Law, 47.) Malice, being a question of fact, may be proven by direct evidence or inferred from circumstances. (*Lyon* v. *Hancock,* 35 Cal. 372; *McKown* v. *Hunter,* 30 N. Y. 625; *Dietz* v. *Langfitt,* 63 Pa. St. 234; *Kinsey* v. *Wallace,* 36 Cal. 466; *Murphy* v. *Hobbs,* 8 Col. 17; *Ventress* v. *Rosser,* 73 Ga. 534.) Malice may be inferred from a want of probable cause. (*Ventress* v. *Rosser,* 73 Ga. 534; *Kinsey* v. *Wallace,* 36 Cal. 466.)

The burden of proof while on the plaintiff, requires but little evidence to support it. (*Sutton* v. *Anderson*, 103 Pa. St. 151; *Stone* v. *Crocker*, 24 Pick. 81; *McCormick* v. *Sisson*, 7 Cow. 715.) A discharge by the magistrate is *prima facie* and persuasive proof of want of probable cause. (*Frost* v. *Holland*, 75 Me. 108; *Sharpe* v. *Johnston*, 76 Mo. 660; *Sappington* v. *Watson*, 50 Mo. 83; *Gould* v. *Sherman*, 10 Abb. Pr. 411; *Griffis* v. *Sellars*, 2 Dev. & B. 492; 31 Am. Dec. 422; Greenleaf on Evidence, sec. 455.) Such discharge throws the burden on defendant. (*Josselyn* v. *McAllister*, 25 Mich. 45.) While the burden is usually on the plaintiff, yet, where the defendant, as in this case, pleads in detail the truth of the matters involved in the prosecution, he thereby assumes the burden of their proof. (*Morris* v. *Corson*, 7 Cow. 281.) The advice of counsel in bringing the prosecution is no defense, nor is it conclusive to show a want of probable cause, but only a circumstance to be considered by the jury, tending to show good faith and a want of malice. (*Lemay* v. *Williams*, 32 Ark. 166; *Jacobs* v. *Crum*, 62 Tex. 411; *Gulf etc. Ry. Co.* v. *James*, 73 Tex. 12; 15 Am. St. Rep. 743; *Ramsey* v. *Arrott*, 64 Tex. 322; *Glasgow* v. *Owen*, 69 Tex. 167; *Cooper* v. *Utterbach*, 37 Md. 282; *Hogg* v. *Pinckney*, 16 S. C. 387; *Watt* v. *Corey*, 76 Me. 87; *Peck* v. *Chouteau*, 91 Mo. 140; 60 Am. Rep. 236.) Yet, if the jury believe from all the facts that the suit was malicious, the advice of counsel affords no protection. (*Vinal* v. *Core*, 18 W. Va. 1; *Sharpe* v. *Johnston*, 76 Mo. 660; *Brewer* v. *Jacob*, 22 Fed. Rep. 217.) And if he acted from motives of private interest, the advice of counsel will not exempt him from liability. (*Glascock* v. *Bridges*, 15 La. Ann. 672.)

*Graves, O'Melveny & Shankland,* and *S. M. White,* for Respondent.

Plaintiff's examination for the purpose of placing him under bonds was in the nature of a trial, and his ultimate discharge was not evidence of probable cause. (14 Am. & Eng. Ency. of Law, 65, note 2, 67, note 5;

*Ganea* v. *Southern Pac. R. R. Co.,* 51 Cal. 140.) As the defendant had reasonable grounds for his belief, and acted in good faith in causing the arrest, he cannot be subjected to damages merely because the plaintiff was not convicted. (*Ball* v. *Rawles,* 93 Cal. 228; 27 Am. St. Rep. 174; *Potter* v. *Seale,* 8 Cal. 217; *Hollis* v. *Meux,* 69 Cal. 625; 58 Am. Rep. 574.) Plaintiff was bound to prove want of probable cause and malice in order to recover. (*Bulekley* v. *Smith,* 2 Duer, 271; *Grant* v. *Moore,* 29 Cal. 644; *Jones* v. *Jones,* 71 Cal. 89; *Ball* v. *Rawles,* 93 Cal. 232; 27 Am. St. Rep. 174.) Malice cannot be presumed in the defendant. (*Sears* v. *Hathaway,* 12 Cal. 277.) The court did not err in determining that the facts did not amount to probable cause. (*Harkrader* v. *Moore,* 44 Cal. 144; *Grant* v. *Moore,* 29 Cal. 644; *Fulton* v. *Onesti,* 66 Cal. 575; *Ball* v. *Rawles,* 93 Cal. 227; 27 Am. St. Rep. 174.) The advice of counsel under which the defendant acted in causing the arrest is a defense to this action. (*Ball* v. *Rawles,* 93 Cal. 232; 27 Am. St. Rep. 174.) All entries on the possession of another are unlawful, and good faith on the part of the trespasser is immaterial. (*Voll* v. *Hollis,* 60 Cal. 575; *Giddings* v. *'76 Land and Water Co.,* 83 Cal. 100, 101.) The admission of testimony showing the acts and declarations (made without the hearing of appellant) by members of the protective association and others, of the intention of the association to take possession of respondent's land was proper. (Code Civ. Proc., sec. 1870, subds. 5, 6; Greenleaf on Evidence, sec. 101; *Lamb* v. *Galland,* 44 Cal. 609.)

Haynes, C.—On October 13, 1891, defendant, Porter, made complaint against the plaintiff, Lacey, charging him with threatening to enter upon and detain, by force and violence, the lands of the Porter Land and Water Company, a corporation, in which Porter was a large stockholder. Upon this complaint the justice of the peace issued a warrant, and Lacey was arrested the same day, but being unable to give bail that evening was com-

mitted to jail, where he remained seventeen hours.  He
was afterwards examined before the justice and dis-
charged, and thereupon brought this action against
Porter for malicious prosecution.  A jury trial was had,
and, at the conclusion of the evidence, the defendant
moved the court to instruct the jury to render a verdict
for the defendant.  The instruction was given, and a
verdict returned in compliance with the instruction,
upon which judgment was entered.  Plaintiff moved
for a new trial, and this appeal is from the judgment
and the order denying said motion.

No complaint was made by plaintiff other than that
the prosecution was malicious and without probable
cause; and these questions, he contends, should have
been submitted to the jury.  Some questions arising
upon the admission of evidence are also made.

The lands of the Porter Land and Water Company,
above mentioned, are part of the Mexican grant known
as the "Rancho Ex-Mission de San Fernando."  This
grant was confirmed by the United States, and a patent
therefor was issued in 1873, and was duly recorded in
the recorder's office in Los Angeles county in 1876.
The south half of the grant (generally known as the
"Van Nuys tract") is owned by the "Los Angeles Farm-
ing and Milling Company."  The lands of the Porter
Land and Water Company are in the north half of the
grant, and adjoin the Van Nuys tract.  Other portions of
the north half are held by individuals, among whom
are Hubbard and Wright, who also own a tract, the
south boundary of which is the Van Nuys tract, and all
held under titles derived by mesne conveyances from
the patentee.

At and prior to the time of the arrest, the plaintiff
was a member of an organization called the "San Fer-
nando Protective Association," which then had a mem-
bership variously stated at from two hundred to four
hundred men.  This organization had a written consti-
tution, and all the officers usually had by voluntary
associations, including a treasurer to whom all moneys

were to be paid over by the secretary, and who disbursed the same on orders drawn by the association. The membership fee was fifteen dollars, upon the payment of which he was entitled to a membership certificate. The dues were five dollars per quarter. The object of the association, as stated in the preamble to the constitution, was "to have the title to certain portions of the lands of the San Fernando valley declared invalid and open to settlement and entry as public lands"; or, as stated by the plaintiff in his testimony, "I think the association was for the purpose of jumping the land." Each member was restricted to one hundred and sixty acres, but if he desired more, he was required to pay to the secretary twenty-five dollars for each additional one hundred and sixty acres he might select. The land referred to in the preamble above quoted, and in the testimony of the plaintiff, was the said Mexican grant so confirmed and patented by the United States.

Prior to the arrest of the plaintiff the association had employed a surveyor named Grove, who surveyed and subdivided the south half of the grant, and it, or a large portion of it, was allotted to members of the association in individual parcels of one hundred and sixty acres each; and on and prior to October 8th fifty or sixty houses or shanties had been erected and occupied by members of the association on that part of the grant.

The character of the entry upon and occupation of these lands is not doubtful. It was the unlawful and forcible entry by a large number of persons, organized and banded together for that purpose, upon the peaceable and actual possession of another whose title was evidenced by the patent of the United States, as was well known to the association.

Nor were these lands wild and unimproved, but for many years, certainly for fifteen to twenty years, had been regularly cultivated, and at the time of the entry the stubble of the preceding harvest was upon the ground.

The purposes of the association, however, were not confined to the south half of the grant. Whether the occupation of the south half before any open attempt to enter upon the north half was because of that part having been first surveyed, or whether it was for the better protection of the invaders by the proximity of their locations, it is not essential to inquire.

On October 7, 1891, Shaffer, a member of the association, having made a selection of land on the north side from a map, went, with two other members, to find it, and on that occasion met Mr. Wright, one of the owners of the Hubbard & Wright tract, with whom they had some words. On the next day, Grove, the surveyor, with about fifteen men (among whom were Shaffer, with a load of lumber, and the plaintiff) came to the south line of section 26, part of which section belonged to Hubbard & Wright, and part to the Porter Land and Water Company, where they were met by Mr. Wilson, the superintendent of the Porter Land and Water Company, and Mr. Wright, who stopped them. Grove, who did the talking for the crowd, said they had come to settle on section 26; that they might as well let them go on there peaceably, that they were going on there anyhow, that he had three or four hundred men belonging to the league, and had plenty of money back of them. The talk continued until between sundown and dark, when the crowd turned back.

The next morning Grove and the plaintiff, with several others, came again to the line. Plaintiff was head chainman. They had surveyed up to the line, and had gone about a half chain over, when Wilson, for the Porter Land and Water Company, forbade them going over the line, and pulled up a pin that had been stuck north of the line, and threw it back across the line. Plaintiff then went back across the line, and said: "I ain't a bit afraid of you; I'll give you a pointer on that." Grove said (but not in the presence of plaintiff) that if he had given the word the day before his men would have gone on the land too quick, and that they

(Wright & Wilson) would not have been anywheres; that his men were all armed; that they were coming again on Monday, and they might just as well let them go there and settle; that they considered it government land, and they calculated to go on it.

The defendant, Porter, consulted the district attorney, and for that purpose visited his office two or three times, and was advised by him that he had a legal remedy, and directed the assistant district attorney to prepare a form of complaint to be used by defendant to procure warrants for the arrest of plaintiff and others, and such form was prepared and was used to procure plaintiff's arrest. Grove, the surveyor, and several others, were included in the same complaint.

Other facts, so far as material to be noticed, will be referred to in the examination of the points made by appellant.

The errors relied upon by appellant are (as stated in his brief):

1. "The admission of testimony showing the acts and declarations (made without the hearing of appellant) by members of the protective association and others, of the intention of the association to take possession of respondent's land, no conspiracy having been shown."

The constitution of the association was put in evidence by the plaintiff, and he admitted that he was a member, and that the object of the association was to "jump the land." Grove, it is true, was not a member of the association, but was its employee, aiding and assisting it, and having full knowledge of its existence and purposes, and all the statements and acts, whether of Grove or of the members of the association, were made and done while they were engaged in the accomplishment of the common design. Appellant was not only a member of the association, but was actively participating in what was being done, and it was not necessary to the admissibility of the declarations of the others that he should have been present and within

hearing, even if he had been on trial upon the charge made against him.

2. It is further insisted that the court erred in "taking from the jury the questions of the credibility of witnesses, malice, motives, intention, and belief of respondent, and what facts the evidence established."

The general rule undoubtedly is that these questions should be submitted to the jury where the evidence is conflicting; but it is equally well settled that the court may within certain limits control the verdict, either by such an instruction as was here given, or by setting it aside and granting a new trial, either upon motion of the defeated party or upon its own motion. .

To justify the court in directing a verdict it is not necessary that there should be no conflict in the evidence; but where the evidence is such that it is clearly insufficient to support a verdict in favor of the party against whom the direction is given, the instruction is proper, unless the circumstances of the case indicate that upon another trial the evidence may be materially different, in which case the facts should be submitted to the jury in order that a new trial may be had. But in either case the decision of the court below will be sustained, unless the appellate court can clearly see that its conclusion is wrong upon the facts.

"In an action for malicious prosecution the burden is on the plaintiff to show affirmatively that there was a want of probable cause." (*Grant* v. *Moore*, 29 Cal. 656; *Emerson* v. *Skaggs*, 52 Cal. 247.)

"Actions for malicious prosecution have never been favored in law, although they have always been readily upheld when the proper elements therefor have been presented. They are sustained, however, only when it is shown that the prosecution was in fact actuated by malice, and that the party instigating it had no reasonable ground for causing the prosecution." (*Ball* v. *Rawles*, 93 Cal. 228; 27 Am. St. Rep. 174.)

Malice is a question of fact; but what facts and circumstances amount to probable cause is a pure question

of law, though whether such facts and circumstances exist is a question of fact. (*Ball* v. *Rawles*, 93 Cal. 227; 27 Am. St. Rep. 174; *Stone* v. *Crocker*, 24 Pick. 84.)

The fact of the organization and purposes of the San Fernando Protective Association; that the Van Nuys tract had largely been occupied by members of the association acting in concert; that the purpose was also to occupy that part of the original grant then belonging to the Porter Land and Water Company; that Shaffer, accompanied by about fifteen men, among whom were plaintiff and the surveyor, Grove, with a four-horse team loaded with lumber, were proceeding to go upon the land, when taken with the statements of Grove that the owners might as well yield peaceably; that he had three or four hundred men, and would go on the land, all of which was shown without substantial contradiction, and all, except the statements of Grove last above referred to, by the testimony of the plaintiff, renders it too plain for argument that defendant had probable cause for the arrest of plaintiff. It does not matter that no threat to occupy defendant's land was made by plaintiff personally, nor that he had already selected a quarter section on the other part of the tract. The occupation of the Van Nuys tract in the manner described, with any movement towards the occupation of the other part of the grant with large numbers of men, was a threat to occupy it forcibly. Why should fifteen men accompany one wagon-load of lumber if the entry was intended to be lawful and peaceable?

If the facts as they existed were such as to constitute probable cause, and the defendant acted thereon in good faith, it is not necessary to show that he consulted counsel. Taking the advice of counsel, however, tends to show good faith and honest motives, and the absence of malice; and where the facts upon which a criminal complaint is based are fully stated to counsel, and his advice is acted upon in good faith, the plaintiff cannot recover. (*Ball* v. *Rawles*, 93 Cal. 235; 27 Am. St. Rep. 174.) But if probable cause is found to exist, no amount of malice

will entitle plaintiff to recover; for though malice is inferred from want of probable cause, still where probable cause does exist, malice, even affirmatively shown, will not entitle the plaintiff to a verdict. (*Thompson* v. *Beacon Valley etc. Co.*, 56 Conn. 493.)

The circumstances relied upon by appellant to show malice on the part of defendant are insufficient for that purpose; but as it is clear that probable cause for the arrest was shown, it is not necessary to discuss them. We think the instruction to find for defendant was right, and that the judgment and order should be affirmed.

SEARLS, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

GAROUTTE, J., HARRISON, J., VAN FLEET, J.