[Civ. No. 7309. First Appellate District, Division One.—November 15, 1930.]

LATANE TORNEY, Respondent, v. CHRIS PETERSEN, Appellant.

Hugh K. McKevitt for Appellant.

Ford & Johnson and Fletcher A. Cutler for Respondent.

THE COURT.—This is an action for damages for malicious prosecution. A jury returned a verdict for the plaintiff in the sum of $5,250. A motion for a new trial was denied, and the defendant has appealed from the judgment entered upon the verdict. It is contended that the verdict is unsupported, that the damages awarded were excessive and that the trial court erred in its instructions to the jury.

The defendant was the owner of an apartment house in San Francisco. In February, 1927, the plaintiff rented a furnished apartment therein for herself and her son, who was about twelve years of age. She agreed to pay therefor a monthly rental of $75 and to make additional payments for electricity, gas, and laundry service. According to her testimony she brought to the apartment wearing apparel for herself and son, with certain toys belonging to the latter. Her former husband was an officer in the regular army, and later an army cot and blankets belonging to the government were sent to the apartment by him and previous to her departure therefrom were openly removed. She occupied the apartment until December 20, 1927, to which date she had paid the defendant the sum of $723.24. During that month she became ill and was advised by physicians to receive treatment at a hospital. The manager of the apartment house visited the apartment before plaintiff left and was advised of her intentions and also of the fact that she was taking certain clothing and other articles with her. When leaving plaintiff requested that the apartment be held for two days or until she could ascertain the length of time necessary for her to remain away. The manager refused this request, and plaintiff was told that if she wished to keep the apartment she must send notice from the hospital. This notice was not given, and plaintiff was notified that the apartment was not being held for her. She left therein a coat and other garments which the manager later stated in substance that she was holding as security for the rent. The latter visited the plaintiff at the hospital and was informed as to the probable duration of her stay, and was also told that plaintiff would call at the apartment house with regard to the unpaid balance owing for rent. At this time plaintiff surrendered her key to the apartment, another key which she held having been previously surrendered. She remained at the hospital for six weeks, when after telephoning the manager of her intention she removed to a hotel in San Francisco. Thereafter she visited the home of a friend, where she received a letter from defendant which was addressed to the hotel mentioned, inclosing a statement of account. In this she was charged for the rent of the apartment for the time she was in the hospital, the balance claimed being $256.87. Upon

receipt of the statement she telephoned the manager disputing the amounts charged, particularly the charge for rent during the period last mentioned. She afterward went to reside in another hotel in San Francisco where a second statement was rendered for a balance of $327.98, of which the arresting officer demanded payment as the alternative of her being taken into custody. The criminal complaint, which was drawn by an assistant district attorney of the city and county of San Francisco, was sworn to by defendant before a police judge of the municipality, and charged plaintiff with the crime defined in section 537 of the Penal Code, commonly known as defrauding an innkeeper. This complaint alleged in substance that plaintiff with intent to defraud the defendant obtained at his inn, restaurant, and boarding-house, food and accommodation without paying therefor; further that having obtained credit and accommodation at his inn and boarding-house, she fraudulently absconded and removed her baggage therefrom without paying for her food and accommodation. A warrant was issued thereon and plaintiff was arrested on March 20, 1928. She was confined in the San Francisco city prison from 10 o'clock A. M. to 5 o'clock P. M. of that day, when she was released on bail. She was subsequently tried upon the charge and acquitted.

The circumstances attending her arrest and detention were, according to her testimony, as follows: The arresting officer, after demanding payment of the account last rendered, which plaintiff refused, placed her under arrest. Not being dressed for the street she requested permission to change her clothing, which the officer permitted, but insisted on being present. She was then taken to jail and confined in a cell with six other prisoners, among whom were immoral women and drug addicts, whose conduct as she described it was extremely offensive. She further testified that the experience caused her great humiliation and mental distress and it was shown that the arrest was given considerable publicity in the San Francisco newspapers. According to the defendant he had no personal acquaintance with the plaintiff, but on the day the latter left the apartment and went to the hospital he was advised of the fact. He also knew that after she left the hospital she telephoned his manager with reference to the first statement sent her.

He testified that all of the facts were disclosed by him to his attorney and to a deputy district attorney of the city and county, who advised that a prosecution would lie against the plaintiff. Two of the attorneys were unable to recall in detail the statements made to them by the defendant, but they remembered that they were consulted and upon the facts presented advised that a criminal offense had been committed. A third testified that defendant stated that plaintiff left the apartment and went to the hospital with his consent with the understanding, however, that she would return to the apartment, but that he later ascertained that she had taken with her all of her effects of value. The attorney was not told, however, that the bill rendered was disputed or that a second statement differing from the first was rendered, and none of the attorneys testified that defendant made claim that food was furnished or that plaintiff failed to pay for anything other than was set forth in the bills rendered. The manager testified that she was told by plaintiff of her intention to go to the hospital and that she requested that the apartment be held for her; also that she visited plaintiff at the hospital and there obtained the return of one of the keys to the apartment.

Notwithstanding the allegations of the criminal complaint, it is not contended that plaintiff obtained food at any inn, restaurant or boarding-house conducted by the defendant or failed to pay for anything other than as shown by the statements rendered, which covered rent, gas, electricity, laundry service, charges for cleaning the apartment and for the breakage and loss of certain household articles.

In order to recover, it was incumbent upon the plaintiff to show want of probable cause for the prosecution as well as malice on the part of the defendant (*McKenna* v. *Heinlen*, 128 Cal. 97 [60 Pac. 668]). Malice, however, may be inferred from a want of probable cause (*Lacey* v. *Porter*, 103 Cal. 597 [37 Pac. 635]). For the purpose of justifying a prosecution alleged to have been malicious and without probable cause, a defendant may show that before commencing the prosecution he was advised by counsel after a full and fair disclosure of all the facts within his knowledge that a crime had been committed, and that he acted upon the advice in good faith. (*Johnson* v. *Southern Pac. Co.*, 157 Cal. 333 [107 Pac. 611].) This has been said to

be an affirmative defense, by way of confession and avoidance (16 Cal. Jur., Malicious Prosecution, sec. 11, p. 742), and if proved will constitute a complete defense to the action. (*Griswold* v. *Griswold*, 143 Cal. 617 [77 Pac. 672].) ■ Whether the prosecution was malicious (*Lacey* v. *Porter, supra*) or a party has fully and fairly communicated to counsel all the material facts which he knew (*Seabridge* v. *McAdam*, 108 Cal. 345 [41 Pac. 409]) or acted in good faith upon the advice received (*Potter* v. *Seale*, 8 Cal. 217; *Ball* v. *Rawles*, 93 Cal. 222 [27 Am. St. Rep. 174, 28 Pac. 937]; *Murphy* v. *Davids*, 181 Cal. 706 [186 Pac. 143]) are questions for the jury. And where on the question of probable cause the evidence is conflicting, or different inferences might be drawn from the evidence, it is the province of the jury to determine whether or not the facts sustain an inference of probable cause (*Franzen* v. *Shenk*, 192 Cal. 572 [221 Pac. 932]). ■ Here the evidence was such that these questions were properly submitted to the jury and we are satisfied from the facts and circumstances shown that their implied findings thereon are fully sustained.

■ Defendant complains of an instruction that the jury might consider the reasonable value of the services of plaintiff's attorney in defending the criminal prosecution, not exceeding, however, the amount of damages asked in that connection, namely, $250. As defendant contends, there was no evidence that any attorney's fees were paid or a liability therefor in that or any amount was incurred by plaintiff in the proceeding. And it is evident from the amount of damages allowed by the jury, namely, $5,250, that the above claim was included therein.

■ The jury was also instructed as follows: "If you find from the evidence that the refusal of plaintiff to pay the bill presented to her by defendant for accommodation at the Marianna apartments was made in good faith and because she had not agreed to pay rent for the apartment while she was in the hospital and that such claim was known to the defendant and that it was made under such circumstances as would lead a reasonable person to believe that it was made in good faith and if you further find that the defendant instituted the prosecution of plaintiff maliciously with intent to compel plaintiff to pay said bill to escape

said prosecution, you may find a verdict for plaintiff even though you are unable to determine the merit of such bill.'' As urged by defendant, the instruction ignores the element of probable cause. This, however, was fully covered in other instructions wherein the jury was charged that, before she could recover, plaintiff must prove that defendant prosecuted the criminal action both maliciously and without probable cause.

It is further contended that the damages allowed were excessive ·and that the same appear to have been awarded under the influence of passion and prejudice. With the exception of the amount which appears to have been allowed for attorney's fees alleged to have been incurred in defending the criminal action, we cannot say that the damages awarded were excessive. The plaintiff was shown to be a woman of refinement, and considering the indignities to which she was subjected, the amount was not more than commensurate with her mental and physical sufferings. Moreover, her physical condition at the time as described by her physician was such that the experience was reasonably calculated to have the effect claimed by her.

The evidence was sufficient to support the verdict, and with the exception of the erroneous allowance of attorney's fees, which will require a modification of the judgment to that extent, the record discloses no error which would justify a reversal. The judgment is accordingly modified by deducting therefrom the sum of $250 and as so modified is affirmed. It is further ordered that appellant recover his costs on appeal.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 15, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 12, 1931.

Shenk, J., and Waste, C. J., dissented.